IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                 Plaintiff,<br><br>     vs.<br><br>ANTHONY MILES SINCLAIR.<br><br>                 Defendant. | Civil Action No. 1:22-cv-699<br><br>Honorable _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, alleges against Defendant Anthony Miles Sinclair ("**Sinclair**") as follows:

**I. INTRODUCTION**

1. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2. This case stems from a fraudulent tax refund scheme that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3. The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark. The Danish companies are required to withhold 27% tax on dividends they pay to shareholders. Under certain double taxation treaties between Denmark and other countries,

---

1. At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff changed its legal name to Skatteforvaltningen, effective July 1, 2018.

including the United States, this tax is reimbursable to non-Danish shareholders that meet certain qualifications.

4. The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies. These applications were fraudulent because the claimants did not own the shares that they claimed to own, did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds they claimed. These applications were also fraudulent because the claimants falsely represented that they met the qualifications set forth in the double taxation treaty between Denmark and the United States for a full repayment of the tax withheld on dividends.

5. The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The agents submitted the fraudulent applications at the direction of, and on behalf of, the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and were entitled to a tax refund. The agents obtained over $2.1 billion in refunds from SKAT and distributed the proceeds of the scheme to the claimants and other participants in the fraud. During the period 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, including four pension plans in which Defendant Sinclair was the participant, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6. On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia. Based on this information, SKAT undertook an investigation and

subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, had earned substantial dividend income on their shares, and were entitled to refunds of tax withheld in respect of those dividends. Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and were not entitled to a refund of withholding tax.

7. As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled. During the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8. On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme. At the same time, SKAT reported the alleged fraud to the Danish Public Prosecutor for Serious Economic and International Crime ("**SØIK**"). The fraudulent scheme is currently under investigation by law enforcement authorities in Denmark, the United Kingdom, Germany, and other jurisdictions. To date, the results of these investigations include criminal charges in Denmark against at least eight individuals and one financial institution, and fines imposed by the United Kingdom's Financial Conduct Authority against three U.K. brokerage firms that participated in the scheme.

9. The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

    a. The Authorized Representatives of the claimants, such as non-party Roger Lehman, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

3

b. The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives; and

c. The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares.

10. Defendant Sinclair knew or should have known that these false representations would cause SKAT to make payments to which he, the pension plans in which he was a participant, and others who received proceeds from the fraud were not entitled.

11. SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants and the Authorized Representatives.

12. As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13. As a result of the fraudulent claims by the pension plans in which Sinclair was a participant, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 188,144,379.18, or at least $26,222,200 (US)[2], plus interest.

**II.     JURISDICTION & VENUE**

14. Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and a citizen of a state.

---

[2]. This amount is the result of a conversion from DKK to U.S. Dollars performed on November 28, 2022, utilizing a conversion rate of 1 U.S. Dollar to 7.175 DKK.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. In the alternative, venue is proper because Defendant is subject to the jurisdiction of this Court.

## III. PARTIES

16. Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes. SKAT is located at Østbanegade 123, 2200 København Ø, Denmark. During the period material to the events described in this Amended Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17. Defendant Sinclair is a citizen of the State of Ohio. At times relevant to the allegations in this Amended Complaint, Defendant Sinclair resided at 10524 Margate Terrace, Cincinnati, OH 45241. Defendant Sinclair was the sole participant in four different pension plans that submitted fraudulent refund applications to SKAT: The Bella Consultants Pension Plan, The Green Group Site Pension Plan, The Mueller Investments Pension Plan, and The Sinclair Pension Plan (together the "**Plans**" or the "**Sinclair Plans**").[3] In their submissions to SKAT, each of the Sinclair Plans listed its address as 10524 Margate Terrace, Cincinnati, OH 45241.

---

3. SKAT has filed suit in this District against each of the four Sinclair Plans, each in a separate lawsuit, all four of which have been transferred to the United States District Court for the Southern District of New York for pretrial proceedings pursuant to Order of the United States Judicial Panel on Multidistrict Litigation dated October 3, 2018. *See In Re: Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-02865-LAK (S.D.N.Y.) (the "**MDL**") ECF No. 1.

IV. **FACTUAL ALLEGATIONS**

    A. **The Danish Withholding Tax System**

18. Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority. In this case, the relevant tax authority is SKAT.

19. Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

20. Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

21. A double taxation treaty between Denmark and the United States[4] ("**the Treaty**") allows for a full refund of tax withheld on dividends paid by Danish companies to qualified U.S. pension plans, which are exempt from taxation. In order to qualify for a full refund under the Treaty, the U.S. pension plans must possess tax-qualified status under section 401(a) of the Internal Revenue Code and the dividend serving as the basis of the refund request cannot arise from the carrying on of a business by the pension fund. For the reasons set forth in further detail below, the pension plan claimants, including the four Sinclair Plans, did not satisfy these requirements and were therefore not entitled under the Treaty to the refunds they claimed from SKAT.

22. SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they were qualified pension plans, had shareholdings in Danish companies, and

---

4. Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

had received dividends on those shareholdings net of the tax. The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

23. It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

B. **The Fraudulent Scheme**

24. As a result of its investigation, SKAT has now determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian. The respective roles of each of these participants are described in further detail in paragraphs 32 through 66 below.

1. **The Fraudulent Refund Claims Process**

25. The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-party Syntax GIS ("**Syntax**"), each of which submitted claims by mail or by email transmissions.

26. The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

27. Each of the claimants provided the following documentation to SKAT through its designated agents:

    a. a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b. a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

       i.       the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

       ii.       the amount of the tax refund claim;

       iii.       a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

       iv.       the bank account to which SKAT should pay the claim;

    c.    a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

    d.    a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

    e.    in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

28.    By filing a refund application requesting the full 27% refund and enclosing the statement from the IRS, the United States pension plan claimants falsely represented to SKAT that they were qualified U.S. pension plans entitled to the maximum refunds provided by the Treaty.

29.    The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

30. It was SKAT's practice to pay claims that included the required supporting documentation.

31. SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2. The Role of the Claimants

32. Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

33. Each of the claimants, including the Sinclair Plans, made withholding tax refund claims through its Payment Agents, as described in paragraph 27, above.

34. As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that it was an agent of the claimants and was authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims. Each of the four Sinclair Plans represented that non-party Roger Lehman was its Authorized Representative and agent who had authority to act on its behalf with respect to each of its claims.

35. As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim. The Sinclair Plans each represented that non-party Syntax was its agent and had authority to act on its behalf with respect to its claims.

36. Each of the claimants represented to SKAT that it held shares in, and received dividends net of withholding tax from, large Danish listed companies.

37. The Bella Consultants Pension Plan made six (6) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 26,710,966.86. These refund claims were submitted on the following dates: April 13, 2015; April 16, 2015; April 21, 2015; April 23, 2015; April 28, 2015; and May 15, 2015.

9

38. The Green Group Site Pension Plan made fourteen (14) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 67,297,749.10. These refund claims were submitted on the following dates: April 13, 2015; April 16, 2015; April 23, 2015; April 28, 2015; and May 15, 2015.

39. The Mueller Investments Pension Plan made fourteen (14) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 67,700,692.19. These refund claims were submitted on the following dates: April 21, 2015; April 28, 2015; and May 15, 2015.

40. The Sinclair Pension Plan made fourteen (14) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 26,434,971.03. These refund claims were submitted to SKAT on the following dates: April 13, 2015; April 27, 2015; and May 15, 2015.

41. In fact, the four Sinclair Plans did not own the shares they represented to SKAT that they owned and had no dividend tax withheld.

42. In addition to falsely representing that they owned the shares that were the subject of the refund claims, the four Sinclair Plans falsely represented to SKAT in each refund claim that each was a qualified U.S. pension plan entitled to a full refund under the Treaty. These representations were false because the Sinclair Plans did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan.

43. Far from being qualified pension plans, each of the four Sinclair Plans was a sham entity sponsored by a shell company, respectively non-parties Bella Consultants LLC, Green Group Site LLC, Mueller Investments LLC, and Sinclair Consultants LLC (together the "**Sinclair**

**LLCs**"). The four Sinclair Plans were created solely for the purpose of submitting false refund claims to SKAT to advance Defendant Sinclair and others' fraudulent scheme. The Sinclair LLCs conducted no trade or business and had no employees. Further, the Sinclair LLCs and the Sinclair Plans were established shortly before the Sinclair Plans submitted their first refund claims to SKAT. As a result, the Sinclair Plans cannot have satisfied the requirements in section 401(a) of the Internal Revenue Code to be a qualified pension plan.

44. The Sinclair Plans' representations that they were qualified pension plans were false because each Plan did not operate for the exclusive benefit of its sponsoring entity's employees and their beneficiaries. The Sinclair LLCs did not conduct any trade or business, did not have any employees, and did not operate exclusively for the benefit of their employees. Rather, the Sinclair Plans were maintained principally for the benefit of the Broker-Custodians with which each worked, and/or other entities and individuals who were participants in the fraud. After SKAT paid the amount requested in the Sinclair Plans' refund claims, the Plans subsequently directed or permitted the transfer of the large majority of the illicit proceeds of the scheme to these other individuals and entities.

45. The Sinclair Plans' representations that they were qualified pension plans were also false because each Plan was not established with the intent that it be a "permanent" program. The Sinclair Plans were created for the sole purpose of serving as vehicles for making fraudulent refund claims to SKAT and were only intended to operate for as long as the fraudulent scheme was undiscovered and ongoing.

46. The Sinclair Plans' representations that they were qualified pension plans were also false because each Plan was not properly funded. As each Sinclair Plan was an entity established by a shell corporation that conducted no trade or business and therefore had no employees, the

Sinclair Plans cannot have obtained funding from a proper source and cannot have complied with the contribution rules in section 401(a) of the Internal Revenue Code. To the extent that the Sinclair Plans received funding from sources outside of each Plan's sponsor, such activity would similarly violate the funding requirements of the Internal Revenue Code and disqualify the Plans from being qualified pension plans.

47. Each of the Sinclair Plans also falsely represented to SKAT that it was entitled to a full refund under the Treaty to the extent that it engaged in any activities that were debt-financed, in breach of the Treaty's prohibition on the carrying on of leveraged investment activities by a pension fund.

48. Based on the false representations in refund claims described in paragraphs 36 through 47, SKAT made payments totaling DKK 26,710,966.86 to The Bella Consultants Pension Plan on the following dates: April 24, 2015; May 8, 2015; May 27, 2015, and July 6, 2015.

49. Based on the false representations in the refund claims described in paragraphs 36 through 47, SKAT made payments totaling DKK 67,297,749.10 to The Green Group Site Pension Plan on the following dates: April 24, 2015; May 8, 2015; May 27, 2015, and July 3, 2015.

50. Based on the false representations in the refund claims described in paragraphs 36 through 47, SKAT made payments totaling DKK 67,700,692.19 to The Mueller Investments Pension Plan on the following dates: May 8, 2015, May 27, 2015, and July 3, 2015.

51. Based on the false representations in the refund claims described in paragraphs 36 through 47, SKAT made payments totaling DKK 26,434,971.03 to The Sinclair Pension Plan on the following dates: April 24, 2015; May 27, 2015, and July 6, 2015.

52. On information and belief, Defendant Sinclair caused the Sinclair Plans' fraudulent claims to be submitted to SKAT. Defendant Sinclair exerted control over the Sinclair Plans as each Plan's sole participant, and Defendant Sinclair used this control to commit fraud on SKAT.

53. Defendant Sinclair participated in the fraudulent scheme by, among other things, executing plan formation documents for each of the four Sinclair Plans, all less than six months before each of the Plans submitted its first refund claim to SKAT. Defendant Sinclair also signed the formation documents for the LLCs that sponsored The Bella Consultants Pension Plan, The Green Group Site Pension Plan, and The Mueller Investments Pension Plan.

54. Defendant Sinclair executed three Limited Power of Attorney documents, each dated January 29, 2015, appointing non-party Roger Lehman as the Authorized Representative. These Limited Power of Attorney documents were signed on behalf of The Bella Consultants Pension Plan, The Green Group Site Pension Plan, and The Mueller Investments Pension Plan. These Limited Power of Attorney documents gave non-party Roger Lehman the authority to submit these Plans' refund claims to SKAT.

55. In February 2019, through discovery in the MDL, SKAT learned of Defendant Sinclair's participation in the fraudulent scheme, including that he was the sole participant in the four Sinclair Plans.

56. Upon information and belief, Sinclair was introduced to the scheme by non-party Kevin Lehman, the brother of Roger Lehman, who recruited Sinclair along with two other of his friends. Each of the three individuals established between four and six shell entities and affiliated pension plans, which subsequently submitted fraudulent claims to SKAT. Upon information and belief, Kevin Lehman then utilized a conduit entity to disburse the proceeds that these individuals, including Sinclair, received in exchange for their participation.

### 3. The Role of the Claimants' Authorized Representatives

57. Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative, a form entitled "Power of Attorney." By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

58. Non-Party Roger Lehman executed at the direction of, and on behalf of, each of the Sinclair Plans a "Limited Power of Attorney" dated March 5, 2015, that granted to Payment Agent Syntax authority to be each Plan's "true and lawful attorney-in-fact and agent[] to sign and file with applicable authorities any and all applications, requests, or claims for refund, reduction, repayment, and credit of, or exemption or relief from, any withholding or similar taxes in any jurisdiction." Non-party Roger Lehman described himself as the "Authorized Representative" of the Sinclair Plans.

### 4. The Role of the Payment Agents

59. The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

60. By means of the Power of Attorney described in paragraphs 57 through 58 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and subject to their control with respect to submitting the withholding tax refund claims.

61. With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 27 above. Payment Agent Syntax's cover letter, submitted at the direction of and on behalf of the Sinclair Plans, also contained the false statement that each plan was a "qualifying U.S. pension fund" within the meaning of the Treaty, and was therefore entitled to a "complete refund of Danish Dividend Tax." Additionally, the

14

documentation attached to the cover letter falsely represented to SKAT that each of the Sinclair Plans was a qualified pension plan that satisfied the criteria under the Treaty and was therefore entitled to a full 27% refund.

62. In connection with each Claim Form, the Payment Agent:

    a. provided its email address as the contact address for the claimant on whose behalf it was acting;

    b. signed and stamped the form, and stated it was applying on behalf of the claimant;

    c. enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

    d. requested that SKAT pay the claim to its bank account.

63. As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants. On information and belief, the Payment Agents subsequently distributed the proceeds to the claimants and other participants in the fraud, including the Broker-Custodians, Authorized Representatives, and the Payment Agents themselves.

    **5. The Role of the Broker-Custodians**

64. Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

65. By way of example, with respect to The Bella Consultants Pension Plan, one example of a "credit advice":

    a. is made out by Telesto Markets LLP;

15

    b.  is dated March 24, 2015, and bears the letterhead of Telesto;

    c.  purports to certify The Bella Consultants Pension Plan's ownership of 6,381,205 shares in Novo Nordisk A/S-B (a genuine company, whose shares were (and are) publicly traded on the Copenhagen Stock Exchange); and

    d.  states an International Securities Identification Number ("**ISIN**") for Novo Nordisk A/S-B shares as "DK0060534915." An ISIN is a twelve-character alpha-numerical code that uniquely identifies securities for trading and settlement purposes.

  66.  The Sinclair Plans, which were not qualified U.S. pension plans for purposes of the Treaty, never owned the shares described above; never received any dividends from Danish companies in which they were purported shareholders; and were not entitled to claim a refund of dividend withholding tax.

## CAUSES OF ACTION

### COUNT I

**(Fraud)**

  67.  SKAT repeats and realleges paragraphs 1 through 66 above as if fully set forth herein.

  68.  Defendant Sinclair intentionally, knowingly and/or recklessly made or caused to be made the material, false, and fraudulent statements described in paragraphs 27 through 28, 36 through 47, and 64 through 66 to support claims for withholding tax refund payments.

  69.  Defendant Sinclair intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims.

  70.  In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 188,144,379.18, or at least $26,222,200 (US), and thereby suffered damages of that amount, plus interest.

71. Defendant Sinclair's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Unjust Enrichment)

72. SKAT repeats and realleges paragraphs 1 through 71 above as if fully set forth herein.

73. This is a claim by SKAT for recovery of monies by which Defendant Sinclair was unjustly enriched.

74. By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which he was not entitled, Defendant Sinclair was unjustly enriched.

75. SKAT suffered a loss because of Defendant Sinclair's unjust enrichment.

76. Defendant Sinclair is liable to account for and pay to SKAT the amount of dividend withholding tax refund payments he received from SKAT to which he was not entitled, plus interest.

## COUNT III

### (Money Had & Received)

77. SKAT repeats and realleges paragraphs 1 through 76 above as if fully set forth herein.

78. As a result of the fraudulent scheme, Defendant Sinclair received proceeds from withholding tax refunds to which he was not entitled.

79. SKAT intended for tax refund payments to be made only in connection with legitimate claims pursuant to the Danish withholding tax system described above.

80. It is against equity and good conscience to permit Defendant Sinclair to keep these monies, and he should account for and pay to SKAT the amount of withholding tax refund payments he received to which he was not entitled, plus interest.

## COUNT IV

### (Negligent Misrepresentation)

81. SKAT repeats and realleges paragraphs 1 through 80 above as if fully set forth herein.

82. In submitting claims for withholding tax refund payments, Defendant Sinclair had a duty to SKAT to provide claims information that was truthful, accurate, and complete in all material respects.

83. Defendant Sinclair through his Plans made material misstatements described in paragraphs 27 through 28, 36 through 47, and 64 through 66 above in connection with the withholding tax refund claims they submitted or caused to be submitted to SKAT. Defendant Sinclair knew, or should have known, that these statements were inaccurate.

84. Defendant Sinclair intended these material misstatements to induce SKAT to rely upon them, and Defendant Sinclair expected SKAT to rely upon them.

85. SKAT reasonably relied on the misstatements while reviewing the Sinclair Plans' claims, and as a direct and proximate result incurred damages of DKK 188,144,379.18, or at least $26,222,200 (US), plus interest.

## COUNT V

### (Civil Conspiracy)

85. SKAT repeats and realleges paragraphs 1 through 84 as if fully set forth herein.

86. As alleged above, SKAT was defrauded by the Sinclair Plans' false dividend withholding tax refund applications.

18

87. Defendant Sinclair maliciously conspired, and shared a common design and understanding, with Roger Lehman, Kevin Lehman, and the Sinclair Plans to defraud SKAT by submitting to it the Sinclair Plans' false tax refund applications.

88. Defendant Sinclair performed overt acts in furtherance of the conspiracy to defraud SKAT, including establishing the Sinclair Plans and causing the submission of fraudulent applications.

89. Defendant Sinclair participated in the conspiracy and acted in furtherance of it with the purpose and intent to defraud SKAT.

90. As a direct and natural cause of the conspiracy and Defendant Sinclair's role therein, SKAT suffered substantial damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1. For Counts I, IV and V, for fraud, negligent misrepresentation, and civil conspiracy, the damages sustained by SKAT as a result of Defendant Sinclair's wrongful acts, plus pre-judgment interest, fees, costs, and expenses.

2. For Counts II and III, for unjust enrichment and money had and received, the damages sustained or the amounts by which Defendant Sinclair was unjustly enriched, or by which Defendant Sinclair received money to which he was not entitled, plus pre-judgment interest, fees, costs, and expenses.

3. For Counts I and V, punitive damages.

4. The costs of this action.

5. All other and further relief that is just and proper

## JURY DEMAND

Plaintiff SKAT demands a jury trial on all issues so triable.

Respectfully submitted,

/s/ Jolene S. Griffith
Sabrina Haurin (0079321)
Jolene S. Griffith (0084940)
Bailey Cavalieri LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone: (614) 229-3303
Email:  jgriffith@baileycav.com


HUGHES HUBBARD & REED LLP

Marc A. Weinstein (*pro hac vice* motion to be filed)
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000 (t)
(212) 422-4726 (f)
marc.weinstein@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*