**IN UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

SKATTEFORVALTNINGEN,

Plaintiff,

vs.

ANTHONY MILES SINCLAIR

Defendant.

Civil Action No. 1:22-cv-00699

Judge Susan J. Dlott

**PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANTHONY MILES SINCLAIR'S MOTION TO DISMISS**

BAILEY CAVALIERI LLC
Sabrina Haurin (0079321)
Jolene S. Griffith (0084940)
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
(614) 229-3303

HUGHES HUBBARD & REED LLP
Marc A. Weinstein (*pro hac vice* motion to be filed)
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................2

LEGAL STANDARD....................4

ARGUMENT ....................5

I. SKAT pleaded sufficiently its fraud claim. ....................5

A. Sinclair is liable for his alter ego pension plans' fraud....................5

B. Sinclair is liable for his agent Roger Lehman's fraud. ....................7

II. SKAT pleaded sufficiently its unjust enrichment claim. ....................9

III. SKAT pleaded sufficiently its money had and received claim....................10

IV. SKAT pleaded sufficiently its negligent misrepresentation claim. ....................11

V. SKAT pleaded sufficiently its civil conspiracy claim. ....................11

CONCLUSION....................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ....................4

*Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274 (1993) ....................6

*Buckeye Union Ins. Co. v. SCOA Indus., Inc.*, No. 74AP-247, 1975 WL 181145 (Ohio Ct. App. Feb. 4, 1975) ....................8

*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908 (S.D.N.Y. June 30, 2021) ....................6, 7

*Dana Partners, L.L.C. v. Koivisto Constructors & Erectors, Inc.*, No. 2011-T-0029, 2012 WL 6783637 (Ohio Ct. App. Dec. 31, 2012)....................11

*Davis v. Montenery*, 173 Ohio App. 3d 740 (Ohio Ct. App. 2007)....................10

*Doane v. Givaudan Flavors Corp.,* 184 Ohio App. 3d 26 (Ohio Ct. App. 2009) ....................12

*Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506 (2008) ....................6

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ....................4, 9

*Houssain v. Sundowner of Ohio*, No. 2:08-cv-956, 2009 WL 1097242 (S.D. Ohio Apr. 22, 2009) ....................8

*Hummel v. Hummel*, 133 Ohio St. 520 (Ohio 1938)....................1, 2, 10

*Maple v. R.R. Co.*, 40 Ohio St. 313 (1883) ....................8

*Myer v. Preferred Credit, Inc.*, 117 Ohio Misc.2d 8 (Ohio Ct. Com. Pl. 2001) ....................8

*State ex. rel. Nicodemus v. Indus. Comm'n*, 5 Ohio St. 3d 58 (1983) ....................9, 10

*Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, No. 08-CV-01453, 2009 WL 3242050 (N.D. Ohio Sep. 30, 2019) ....................7

*Rachlow v. Dee*, No. 18927, 2002 WL 91288 (Ohio Ct. App. Jan. 25, 2002)....................12

*Sal's Heating & Cooling Inc. v. BERS Acquisition Co., LLC*, 192 N.E. 3d 537 (Ohio Ct. App. 2022) ....................11

*In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ....................5, 6, 7, 8

## TABLE OF AUTHORITIES
**(Continued)**

**Page(s)**

*In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL 7059843 (S.D.N.Y. Dec. 2, 2020) ... 5, 6, 7

*Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464 (1998) ... 12

*Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146 (S.D.N.Y. 2022) ... 4, 5

**Statutes and Rules**

Fed. R. Civ. P. 9(b) ... 4

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in opposition to defendant Anthony Miles Sinclair's motion to dismiss SKAT's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

**PRELIMINARY STATEMENT**

Defendant Sinclair's arguments that SKAT failed to plead any of its claims against him are meritless and, accordingly, his motion should be denied.

First, Sinclair's argument that SKAT's fraud claim should be dismissed on the ground that SKAT failed to plead that he made any misrepresentations falls short because Sinclair is liable for his *alter ego* pension plans' misrepresentations to SKAT in their tax refund applications, and because Sinclair authorized Roger Lehman to act as his agent in making the misrepresentations. Sinclair's argument for dismissal of the negligent misrepresentation claim similarly fails because Roger Lehman acted as Sinclair's agent in making the misrepresentations.

Next, Sinclair's arguments for dismissal of SKAT's unjust enrichment claim ignore SKAT's allegations and the standard applicable to this Rule 12(b)(6) motion to dismiss, under which the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in SKAT's favor. SKAT specifically alleges that Sinclair received a share of the fraudulent refunds, and it is more than reasonable to infer from SKAT's allegations that Sinclair knew he received SKAT's money and that it would be against equity and good conscience for him to keep proceeds of the fraud.

Third, Sinclair's argument that SKAT's money had and received claim fails as a matter of law because the cause of action is limited to circumstances involving money received under a

1. *See* Mot. to Dismiss For Failure to State a Claim, ECF No. 12. On March 16, 2023, the Judicial Panel on Multidistrict Litigation lifted the stay on its Conditional Transfer Order transferring this action to the multidistrict litigation pending before the United States District Court for the Southern District of New York captioned *In re Customs & Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litigation*, 18-md-2865-LAK (S.D.N.Y.). (ECF No. 13.)

later invalidated contract is contrary to the Ohio Supreme Court's holding in *Hummel v. Hummel* that the claim arises whenever there is "a moral obligation to make restitution which rests upon a person who has received a benefit which, if retained by him, would result in inequity and injustice."[2]

Finally, Sinclair's argument that SKAT's civil conspiracy claim must be dismissed because SKAT supposedly did not plead sufficiently its fraud and negligent misrepresentation claims against him misunderstands the law. SKAT is not required to allege that Sinclair himself made any misrepresentations to plead its civil conspiracy claim. The acts and misrepresentations of Sinclair's coconspirators are attributable to Sinclair, so he may be liable for fraud even if he had not made any misrepresentations to SKAT. And, in any event, SKAT's complaint states fraud and negligent misrepresentation claims against Sinclair.

## STATEMENT OF FACTS

Kevin Lehman, Roger Lehman's brother, recruited defendant Sinclair to participate in the fraud on plaintiff SKAT, the Danish tax authority, which involved deceiving SKAT into issuing "refunds" of "tax" supposedly withheld on dividends that was, in fact, never withheld or owed in the first place. (ECF No. 1 ("Compl.") ¶¶ 1–5, 56.) Under Danish law, when a Danish company issues a dividend to its shareholders, the company is required to withhold 27 percent of the dividend as tax. (*Id.* ¶ 19.) Under the U.S-Denmark double taxation treaty, U.S. pension plans with tax-qualified status under section 401(a) of the Internal Revenue Code that have received dividends on Danish shares may request a full refund of the withheld tax. (*Id.* ¶¶ 20–21.)

The fraudulent scheme involved creating U.S. pension plans that would submit tax refund applications to SKAT falsely claiming that the plan owned huge amounts of shares in Danish

2. 133 Ohio St. 520, 526 (1938).

companies, on which it had received a dividend, net of withholding tax, and that the plan was a qualified U.S. pension plan entitled to a full refund of the purportedly withheld taxes. (*Id.* ¶¶ 3–4.) The plans' representations in the refund applications were fraudulent because the plans never received the claimed dividends and were not the sort of qualified U.S. pension plans entitled to full refunds under the treaty. (*Id.* ¶ 4.)

After Kevin Lehman recruited him to the fraud, Sinclair formed four limited liability companies and affiliated pension plans for the purpose of participating in the scheme. (*Id.* ¶¶ 43, 53, 56.)[3] The four companies were "shell[s]" that "conducted no trade or business and had no employees." (*Id.* ¶ 43.) And Sinclair was the sole participant in each of the four plans, none of which met the requirements for being a qualified pension plan. (*Id.* ¶¶ 17, 42–46.)

In 2015, starting shortly after the plans were formed, Sinclair's four plans submitted a total of 48 applications to SKAT claiming 188,144,379.18 Danish Kroner, over $26 million, in "tax refunds," which SKAT subsequently paid. (*Id.* ¶¶ 13, 37–40, 43, 48–51, 53.) The refund applications each included a Limited Power of Attorney signed by Roger Lehman, as the respective plan's "Authorized Representative," who appointed the payment agent Syntax GIS to submit the fraudulent refund applications to SKAT. (*Id.* ¶¶ 57-58.) For three of the four plans, Sinclair signed Limited Powers of Attorney dated January 29, 2015, authorizing Roger Lehman to submit the plan's refund applications. (*Id.* ¶ 54.) All four of the plans' refund applications listed the respective plan's address as Sinclair's home address. (*Id.* ¶ 17.)

3. Sinclair's four companies were named Bella Consultants LLC, Green Group Site LLC, Mueller Investments LLC, and Sinclair Consultants LLC, and the four affiliated plans were correspondingly named The Bella Consultants Pension Plan, The Green Group Site Pension Plan, The Mueller Investments Pension Plan, and The Sinclair Pension Plan. (*Id.* ¶¶ 17, 43.) SKAT sued Sinclair's four pension plans and Roger Lehman in separate actions consolidated in the multidistrict litigation. *See Skatteforvaltningen v. The Bella Consultants Pension Plan & Roger Lehman*, No. 18-cv-10136; *Skatteforvaltningen v. The Green Group Site Pension Plan & Roger Lehman*, No. 18-cv-10134; *Skatteforvaltningen v. The Mueller Investments Pension Plan & Roger Lehman*, No. 18-cv-10135; and *Skatteforvaltningen v. The Sinclair Pension Plan & Roger Lehman*, No. 18-cv-10133.

Each tax refund application misrepresented that the plan owned Danish shares, on which it had a received a dividend, net of withholding tax, and included a false "credit advice" or similar document from the plan's purported custodian supposedly evidencing the plan's suffering of dividend withholding tax. (*Id.* ¶¶ 36, 41, 64–66.) The refund applications also all represented falsely that the plans were qualified U.S. pension plans entitled to a full refund under the U.S.-Denmark tax treaty. (*Id.* ¶¶ 42–47.)

SKAT paid Sinclair's plans' "tax refunds" to the plans' payment agent Syntax. (*Id.* ¶¶ 11, 57–63.) On receipt of SKAT's money, Syntax distributed the proceeds to the other participants in the fraud, and Kevin Lehman distributed some of those proceeds to Sinclair. (*Id.* ¶¶ 11, 56.)

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, all the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). A complaint should not be dismissed if it contains sufficient factual allegations that, "accepted as true, state a claim" for "relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation omitted).

With respect to fraud claims, while the circumstances constituting the fraud must be stated "with particularity," the "intent, knowledge, and other conditions of a person's mind" may be "alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s particularity requirement, the plaintiff need only "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent." *Yu v. Dreyer's Grand Ice Cream, Inc.*, 592 F. Supp. 3d 146, 163-64 (S.D.N.Y. 2022) (internal quotation omitted).

## ARGUMENT[4]

### I. SKAT pleaded sufficiently its fraud claim.

Sinclair's argument that SKAT's fraud claim should be dismissed because the complaint fails to identify any misrepresentation he made to SKAT is off the mark for two reasons. (Def. Br. 6–7.) First, because Sinclair is liable for his plans' fraudulent misrepresentations under the *alter ego* doctrine. (*Infra*, Section I.A.) And, second, because Sinclair is liable for his authorized agent Roger Lehman's fraudulent misrepresentations. (*Infra*, Section I.B.)

#### A. Sinclair is liable for his *alter ego* pension plans' fraud.

Sinclair's argument for dismissal of SKAT's fraud claim reprises failed arguments that other defendants in the multidistrict litigation, against whom SKAT made similar allegations, have made for dismissal of SKAT's fraud claims on the pleadings. (Def. Br. 6–7.) The MDL Court rejected the same argument from defendant Crescenzo, who SKAT alleged formed 15 companies for the purpose of participating in the fraud, holding that SKAT pleaded sufficiently his "individual liability" for the associated plans' misrepresentations under "the *alter ego* doctrine." *In re SKAT Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 321–23 (S.D.N.Y. 2019). The MDL Court likewise rejected the argument on the same ground when defendants Crema and Wittwer made it. *In re SKAT Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2020 WL

---

4. SKAT presumes for the purposes of this motion that Ohio law applies to its claims against Sinclair but does not concede that Ohio law applies for all purposes in this action.

7059843, at *4, 9 (S.D.N.Y. Dec. 2, 2020) ("SKAT's allegations, taken as true, support a plausible claim for [their] *alter ego* liability").[5]

The result is the same here: SKAT's complaint plausibly alleges that Sinclair is liable for the plans' misrepresentations in the refund applications because he controlled the plans as his *alter egos* and "used [his] control to commit fraud on SKAT." (Compl. ¶ 52.) *Alter ego* liability arises when "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act [or a similarly unlawful act] against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control or wrong." *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 288 (1993), as modified by *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 513 (2008) (modification indicated in brackets).

SKAT alleges that Sinclair formed four "shell" companies, each of which "conducted no trade or business and had no employees," shortly before their affiliated plans began submitting refund applications to SKAT. (Compl. ¶¶ 43, 53, 56.) "It is reasonable to infer from these allegations that" Sinclair "controlled . . . the companies affiliated with the pension plans and indeed that he created them for the purpose of receiving tax refunds." *In re SKAT*, 356 F. Supp. 3d at 323.[6]

---

5. *See also In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-md-2865 (LAK), 2021 WL 2689908, at *6 (S.D.N.Y. June 30, 2021) ("SKAT sufficiently allege[d] that [the] Raubritter [plan] and Burns are *alter egos*").

6. *See also In re SKAT*, 2020 WL 7059843 at *4, 9 ("reasonable to infer" that defendant Crema "controlled the [plan's] sponsor" from allegation that he was its "only officer or director").

And "[t]his inference, coupled with the allegation[s]" that Sinclair also formed the four plans shortly before their first refund applications were submitted, Sinclair was the sole participant in each of the four plans, Sinclair signed Limited Powers of Attorney giving Roger Lehman authority to submit refund applications, and the refund applications all listed Sinclair's home address as the plans' addresses,[7] "permits a second inference: [Sinclair] controlled the pension plans themselves" and used his control to defraud SKAT. *In re SKAT*, 356 F. Supp. 3d at 323.[8] As such, SKAT's complaint pleads sufficiently Sinclair's liability for his *alter ego* pension plans' misrepresentations to SKAT in the tax refund applications.[9]

**B. <u>Sinclair is liable for his agent Roger Lehman's fraud.</u>**

Sinclair's argument for dismissal of SKAT's fraud claim falls short for the additional reason that the complaint pleads that Sinclair authorized Roger Lehman to act as his agent in submitting the fraudulent refund applications to SKAT. "An agency relationship is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Premier Bus. Grp., LLC v. Red Bull of N. Am., Inc.*, No. 08-CV-01453, 2009 WL 3242050, at *5 (N.D. Ohio Sep. 30, 2019) (internal quotation omitted).

---

7. *See* Compl. ¶¶ 17, 43, 53, 54, 56.

8. *See also In re Customs & Tax Admin. of the Kingdom of Denmark*, 2021 WL 2689908 at *6 (allegations that Burns was the sole participant in the plan, the "Authorized Person" for the plan's sponsor, which Burns formed and named, "executed the General Partnership Agreement to facilitate the submission of tax refund claims to SKAT and listed his home address on [the plan's] tax refund claims" were "sufficient to aver plausibly that Burns dominated [the plan] and caused it to commit the alleged fraud."); *In re SKAT*, 2020 WL 7059843 at *9 (allegations that Wittwer and Crema were officers of their plans' sponsors, sole participants in their plans, and "their office addresses were listed in the plans' refund applications" were sufficient to allege "that Wittwer and Crema used the plans to defraud SKAT and obtain dividend tax refunds").

9. The MDL Court's holding that SKAT failed to plead that defendant Louise Kaminer controlled her pension plan based on allegations she was its sole participant and president of the plan's sponsor is distinguishable. *See In re SKAT*, 2020 WL 7059843 at *4. SKAT's allegations against Sinclair are more analogous with its more detailed allegations against Crescenzo, Burns, Witter, and Crema—including that Sinclair formed four shell companies and affiliated sham plans, in each of which he was the sole participant, he signed documents to facilitate the submission of the plans' fraudulent refund applications, and the refund applications listed Sinclair's home address as the plans' addresses—than its allegations against Kaminer.

"The general rule is that a principal is liable for frauds of his agent when committed within the scope of employment." *Myer v. Preferred Credit, Inc.*, 117 Ohio Misc.2d 8, 22 (Ohio Ct. Com. Pl. 2001) (internal quotation omitted). The principal is liable so long as the agent's fraud was "committed in the course of the agent's appointed duties . . . be of the same general nature as those so authorized, or be incidental to the authorized conduct," regardless of the principal's intentions. *Buckeye Union Ins. Co. v. SCOA Indus., Inc.*, No. 74AP-247, 1975 WL 181145, at *3 (Ohio Ct. App. Feb. 4, 1975) (internal quotation omitted).[10]

SKAT alleges that all the plans' refund applications included a Limited Power of Attorney signed by Roger Lehman, in which he identified himself as the plans' representative with authority to authorize the payment agent Syntax to file the plans' refund applications with SKAT. (Compl. ¶¶ 57–58.) For at least three of the four plans, Sinclair appointed Roger Lehman to this role by separate written Limited Powers of Attorney. (*Id.* ¶ 54.)

While Sinclair signed these limited powers of attorney on behalf of the respective plans, SKAT alleges that Sinclair, as the plans' sole participant, "exerted control over" the plans and "caused" the fraudulent refund applications to be submitted to SKAT. (*Id.* ¶¶ 52, 54.) Thus, SKAT's pleading plausibly alleges that Lehman was an agent of both Sinclair and the plans because Sinclair directed and controlled Lehman's submission of the refund applications. *Cf. In re SKAT*, 356 F. Supp. 3d at 322 (resolving "ambiguity surrounding the degree of control the plans retained over the payment agents" in SKAT's favor and concluding that SKAT alleged the payment agents were agents of the authorized representatives, not the plans, in part, because "the

10. *Accord Maple v. R.R. Co.*, 40 Ohio St. 313, 318 (1883) ("The text books . . . agree that when the agent acts 'within the scope' of his agency, the facts that the principal was ignorant of the fraud; did not receive any profit therefrom; and never ratified it, do not relieve him from liability for the fraud."); *Houssain v. Sundowner of Ohio*, No. 2:08-cv-956, 2009 WL 1097242, at *4 (S.D. Ohio Apr. 22, 2009) ("If an agency relationship is established, a principal is liable for any misrepresentation of his agent undertaken within the scope of the agency, whether or not the principal has knowledge of the fraud.").

authorized representatives would be the ones practically directing the actions of the payment agents"). And Sinclair does not dispute that the complaint "explains the fraudulent acts of Mr. Lehman" and identifies misrepresentations he made to SKAT in performing the authorized acts of submitting the refund applications. (Def. Br. 6.)

## II. **SKAT pleaded sufficiently its unjust enrichment claim.**

Defendant's arguments for dismissal of SKAT's unjust enrichment claim wholly ignore SKAT's allegations and the standard of review the Court applies to a Rule 12(b)(6) motion to dismiss. (Def. Br. 7.)

First, Sinclair argues SKAT did not allege that he received any of the fraudulent refunds it paid. (Def. Br. 7.) But SKAT specifically alleges that the plans' payment agent Syntax, on receiving SKAT's payments, "distributed the proceeds to other participants in the fraud," and Kevin Lehman distributed some of those proceeds to Sinclair. (Compl. ¶¶ 11, 56.)

Second, Sinclair contends there are no factual allegations "demonstrating Mr. Sinclair knew he was receiving a benefit from" SKAT. (Def. Br. 7.) But SKAT's pleading alleges that Sinclair was recruited to the scheme by Kevin Lehman; established four shell companies and sham pension plans, shortly before the plans began submitting tax refund applications to SKAT; authorized Roger Lehman to submit the plans' refund applications, which listed the plans' addresses as Sinclair's home address; and then received proceeds from the fraudulent tax refunds from Kevin Lehman. (Compl. ¶¶ 17, 43, 53, 54, 56.) Taking these allegations as true, it is more than reasonable to infer that Sinclair knew the money Kevin Lehman paid him came from SKAT. *See Ganino*, 228 F.3d at 161.[11]

---

11. Sinclair's argument fails for the additional reason that it is reasonable to infer from SKAT's allegations that Roger Lehman, Sinclair's authorized agent, knew Sinclair received SKAT's money, and Lehman's knowledge is imputed to Sinclair under "the general agency principle that the principal is chargeable with and bound by the knowledge of . . . his agent received by the agent in the due course of his employment, with reference to matters

Finally, Sinclair argues there are no allegations that Sinclair "unjustly retained a benefit," apparently based on the dubious outside-the-complaint factual assertion that any money Sinclair received was payment "for his work in forming the LLCs [and] the Pension Plans." (Def. Br. 7.) But that SKAT "does not allege how Mr. Sinclair was compensated" for this purported "work" is not a deficiency in its pleading. (Def. Br. 7.) SKAT alleges that Kevin Lehman paid Sinclair "in exchange for [his] participation" in the fraud, not because he had hired him to form shell companies and sham pension plans. (Compl. ¶ 56.)

## III. SKAT pleaded sufficiently its money had and received claim.

Sinclair argues that SKAT's money had and received claim should be dismissed as a matter of law because under Ohio law, the claim arises only where parties enter a contract that is later determined to be invalid, but under which one side has performed and the other has unjustly retained the benefit of that performance. (Def. Br. 7–9.) But Sinclair cites no case holding that an Ohio law money had and received claim is so limited.

Rather, in *Hummel v. Hummel*, the Ohio Supreme Court defined the cause of action broadly as "based on a moral obligation to make restitution which rests upon a person who has received a benefit which, if retained by him, would result in inequity and injustice." 133 Ohio St. 520, 526 (1938). The Court recognized that the cause of action "is a very extensive and beneficial remedy, applicable to almost every case where the defendant has received money which ex aequo et bono he ought to refund"—"[i]t lies for money paid by mistake, or on a consideration which happens to fail, or through imposition, extortion, or oppression, or where any undue advantage is taken of the plaintiff's situation." *Id.* at 527 (quoting Blackstone Commentaries, Book III, 163).

---

to which his authority extends." *State ex. rel. Nicodemus v. Indus. Comm'n*, 5 Ohio St. 3d 58, 60 (1983) (internal quotation omitted).

## IV. SKAT pleaded sufficiently its negligent misrepresentation claim.

Defendant's argument for dismissal of the negligent misrepresentation claim because SKAT supposedly failed to plead that Sinclair made any representation to SKAT, (Def. Br. 9), fails for similar reasons as the argument for dismissal of the fraud claim. Sinclair is liable for his authorized agent Roger Lehman's misrepresentations to SKAT made within the scope of his authority to submit the plans' tax refund applications. (*See, supra*, Section I.B); *see also Davis v. Montenery*, 173 Ohio App. 3d 740, 751 (Ohio Ct. App. 2007) ("a principal is liable for negligent or intentional misrepresentations made by his agent, made within the course and scope of the agency").[12]

## V. SKAT pleaded sufficiently its civil conspiracy claim.

Finally, Sinclair argues that SKAT failed to plead an underlying tortious act to support its civil conspiracy claim because it supposedly did not allege a requisite misrepresentation by Sinclair to state a claim against him for fraud or negligent misrepresentation. (Def. Br. 9-10.) But, as an initial matter, SKAT pleaded both those claims against Sinclair. (*See, supra*, Sections I & IV.)

Further, to plead its civil conspiracy claim, SKAT is required to allege, in relevant part, only "the existence of an unlawful act independent from the conspiracy itself," *i.e.*, "an underlying tort that would be actionable as an independent cause of action." *Sal's Heating & Cooling Inc. v. BERS Acquisition Co.,* LLC, 192 N.E. 3d 537, 542–43 (Ohio Ct. App. 2022). SKAT plainly did so in alleging that it paid Sinclair's plans' fraudulent tax refund applications. (*See generally* Compl.)

---

12. SKAT recognizes that under Ohio law, negligence is not sufficiently culpable conduct to satisfy the second prong of the *alter ego* standard. *See, e.g.*, *Dana Partners, L.L.C. v. Koivisto Constructors & Erectors, Inc.*, No. 2011-T-0029, 2012 WL 6783637, at *11 (Ohio Ct. App. Dec. 31, 2012) ("mere negligent behavior is not sufficient to establish fraud for purposes of piercing the corporate veil; rather, the behavior must either be purposeful or reckless in nature").

There is no requirement that each coconspirator make their own misrepresentation to be liable for fraud on a civil conspiracy theory. *See Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464, 475–76 (1998) (defendant liable for civil conspiracy to commit fraud despite no evidence "in the record that . . . any [defendant] representative misrepresented" a material fact). "In a conspiracy, the acts of the coconspirators are attributable to each other." *Id*. at 476. Thus, in *Williams*, the Ohio Supreme Court held the defendant liable for fraud based solely on its "role in the conspiracy" of "allow[ing]" the primary fraudster "to have access to loan money that was necessary to further his fraudulent actions." *Id*. Similarly, SKAT pleaded Sinclair's liability for fraud based on his role in the conspiracy of, among other things, forming the pension plans and signing documents necessary to facilitate the fraud.[13]

13. Nor is there any requirement that the plaintiff assert the underlying tort against a defendant in the case. *See Rachlow v. Dee*, No. 18927, 2002 WL 91288, at *4–5 (Ohio Ct. App. Jan. 25, 2002) (holding that plaintiff "alleged the requisite underlying tort" of "malicious prosecution" for her civil conspiracy claim even though she did not assert the claim in the case, and the court affirmed dismissal of her other claims against the defendants). *Doane v. Givaudan Flavors Corp.*, cited by the defendant (Def. Br. 9), is not to the contrary. 184 Ohio App. 3d 26 (Ohio Ct. App. 2009). In *Doane*, the court affirmed dismissal of the civil conspiracy claim because the plaintiffs' asserted tort claims failed as a matter of law *and* "there [was] no evidence in the record to support a claim that either [defendant] conspired with any other entity to harm" the plaintiffs. *Id.* at 37.

**CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court deny defendant Sinclair's motions to dismiss SKAT's complaint.

Dated: March 28, 2023

Respectfully submitted,

/s/ Jolene S. Griffith
BAILEY CAVALIERI LLC
Sabrina Haurin (0079321)
Jolene S. Griffith (0084940)
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone: (614) 221-3155
Email: jgriffith@baileycav.com
shaurin@baileycav.com

HUGHES HUBBARD & REED LLP
Marc A. Weinstein (*pro hac vice* motion to be filed)
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Email: marc.weinstein@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon counsel for the parties to this action via the Court's CM/ECF system this 28th day of March 2023.

/s/ Jolene Griffith
Jolene Griffith (0084940)